UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Jonas P. Mann (SBN 263314)
767 S Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
jonas@umklaw.com

*Attorneys for Defendant San Luis Obispo Golf and Country Club*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. AMERICAN TAXPAYERS FIGHTING FRAUD LLC (f/k/a RELATOR LLC), a California limited liability company,<br><br>        Plaintiff,<br><br>  v.<br><br>SAN LUIS OBISPO GOLF AND COUNTY CLUB, a California corporation,<br><br>        Defendants. | Case No. 2:23-CV-0499-CAS-MBK<br><br>Assigned to: Hon. Christina A. Snyder<br><br>**DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Plaintiffs' Statement of Uncontroverted Facts; Declarations of Matthew Umhofer, Janelle Meyer, and Greg Bethea and Exhibits Thereto; and [Proposed] Order]*<br><br>Hearing Date:  July 27, 2026<br>Time:  10:00 a.m.<br>Place:  Courtroom 8A<br><br>Pretrial Conf.:  August 24, 2026<br>Trial:  September 15, 2026<br><br>Complaint Filed: January 23, 2022 |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE CHRISTINA A. SNYDER, DISTRICT COURT JUDGE, TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, July 27, 2026, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 8A, 8th Floor of the above captioned court, located at 350 W. 1st Street, Los Angeles, California, Defendant San Luis Obispo Golf and Country Club ("Defendant") will and hereby does move this Court for summary judgment in its favor on all claims—brought under the False Claims Act, 31 U.S.C. §§ 3729–33—asserted by Plaintiff-Relator American Taxpayers Fighting Fraud LLC (f/k/a Relator LLC) ("Relator") in the Complaint.

This Motion is made on the grounds that there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law, because:

- Relator's claims are barred by the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), because all of Relator's allegations are based on publicly disclosed information and Relator is not an "original source";
- The undisputed evidence establishes that SLOGCC was eligible for Paycheck Protection Program ("PPP") loans because it does not—and did not—limit its memberships for any reason other than capacity, placing it outside 13 C.F.R. § 120.110(i);
- The SBA's $2 million safe harbor conclusively establishes that SLOGCC's economic-necessity certifications were made in good faith, as a matter of law;
- The undisputed evidence independently confirms that SLOGCC had genuine economic necessity for the PPP loans;
- The undisputed evidence demonstrates that SLOGCC used its PPP proceeds for payroll as the program intended; and

i

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*

- Relator cannot establish the FCA's scienter requirement, because the undisputed evidence shows that the Club conducted extensive due diligence, including consulting with counsel, and acted in good faith.

This Motion is made following the conference of counsel pursuant to United States District Court, Central District of California, Local Rule 7-3, which took place telephonically on June 18, 2026. The parties were unable to reach agreement on the issues raised by this motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the supporting declarations and exhibits thereto, the Request for Judicial Notice, all pleadings and papers on file in this action, and any argument presented at the hearing.

Dated: June 26, 2026

Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Jonas P. Mann

*Attorneys for Defendant San Luis Obispo Golf and Country Club*

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

# **TABLE OF CONTENTS**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF THE CASE ......................................................................... 2

     A.     The Parties ................................................................................................ 2

     B.     The Club's Actual Membership Practices ........................................ 3

     C.     The Club's Due Diligence Before Applying ..................................... 3

     D.     The Club's Economic Position During the Pandemic .................... 4

     E.     The Club's Use of PPP Loan Proceeds ............................................. 5

     F.     Relator's Binding Admissions ............................................................. 5

     G.     Relator's Confirmation of Lack of Non-Public Information ....................... 6

III.   STANDARD FOR SUMMARY JUDGMENT ....................................... 8

IV.   ARGUMENT ...................................................................................................... 9

     A.     The Public Disclosure Bar Requires Summary Judgment ........................ 9

          i.     The Court's Order Denying Defendant's Motion to Dismiss Forecloses Nothing; the Closed Record Compels Summary Judgment on the Public Disclosure Bar ........................................... 10

          ii.    Discovery Has Disproven the Premise on Which the Order Rested .................................................................................... 11

          iii.   On the Closed Record, the Bar Is Satisfied and Relator Is Not an Original Source—the Question the Court Reserved ................... 12

     B.     The Club Was Eligible for the PPP Loans ....................................... 14

          i.     The Regulatory Standard: 13 C.F.R. § 120.110(i) ......................... 14

          ii.    Undisputed Evidence Establishes the Club Does Not Limit Membership for Reasons Other Than Capacity ......................... 15

          iii.   Relator Cannot Carry Its Burden of Proof on Ineligibility ............. 15

     C.     The SBA's $2 Million Safe Harbor Bars the Economic Necessity Claim as a Matter of Law ...................................................................... 17

     D.     The Record Independently Establishes Genuine Economic Necessity .... 18

     E.     The Club Used the PPP Loan Proceeds Exclusively for Payroll ............. 19

iii

F.   Relator Cannot Establish the Required Scienter ....................................20

　i.   The Record Reflects Good-Faith Deliberation, Not Fraud ...........20

　ii.   The Extensive Due Diligence Negates Any Inference of Scienter ........................................................................................21

V.   CONCLUSION ........................................................................................21

CERTIFICATE OF COMPLIANCE..................................................................23

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

# TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE(S)**

Addisu v. Fred Meyer, Inc.,
  198 F.3d 1130 (9th Cir. 2000) ...............................................................................8

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .............................................................................................8

Conlon v. United States,
  474 F.3d 616 (9th Cir. 2007) ........................................................................6, 7, 8

Godecke v. Kinetic Concepts, Inc.,
  937 F.3d 1201 (9th Cir. 2019) .............................................................................20

Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,
  559 U.S. 280 (2010) ............................................................................................10

Malhotra v. Steinberg,
  770 F.3d 853 (9th Cir. 2014) ...........................................................................9, 13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986) .............................................................................................8

Nissan Fire & Marine Ins. Co. v. Fritz Cos.,
  210 F.3d 1099 (9th Cir. 2000) ..............................................................................9

Prather v. AT&T, Inc.,
  847 F.3d 1097 (9th Cir. 2017) .............................................................................14

Schindler Elevator Corp. v. United States ex rel. Kirk,
  563 U.S. 401 (2011)............................................................................................10

Silbersher v. Valeant Pharms. Int'l, Inc.,
  89 F.4th 1154 (9th Cir.) .........................................................................................9

United States ex rel. Bennett v. Biotronik, Inc.,
  876 F.3d 1011 (9th Cir. 2017) ...............................................................................9

United States ex rel. Devlin v. State of California,
  84 F.3d 358 (9th Cir. 1996) ...................................................................................9

United States ex rel. Found. Aiding Elderly v. Horizon W.,
  265 F.3d 1011 (9th Cir.) .........................................................................................9

United States ex rel. Jones v. Sutter Health,
  499 F. Supp. 3d 704 (N.D. Cal. 2020)...................................................................13

United States ex rel. Mateski v. Raytheon Co.,
  816 F.3d 565 (9th Cir. 2016) ...........................................................................9, 11

United States ex rel. Ormsby v. Sutter Health,
  444 F. Supp. 3d 1010 (N.D. Cal. 2020)................................................................20

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*

United States ex rel. Solis v. Millennium Pharms., Inc.,
  445 F. Supp. 3d 786 (E.D. Cal. 2020) ..........................................................................13

United States v. ManPow, LLC,
  2024 WL 305699 (C.D. Cal. Jan. 3, 2024) ...........................................................passim

**STATUTES**

15 U.S.C. § 636(a)(36)(G) ..........................................................................17

31 U.S.C. § 3729(b)(1)(A) ..........................................................................20

31 U.S.C. § 3730(e)(4)(A) ..........................................................................13

31 U.S.C. § 3730(e)(4)(B) ......................................................................11, 13

**RULES**

Fed. R. Civ. P. 36(b) ......................................................................................6

Fed. R. Civ. P. 56 ....................................................................................8, 11

Fed. R. Civ. P. 56(c) ......................................................................................8

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This is a textbook "parasitic" qui tam action. Relator American Taxpayers Fighting Fraud LLC is a serial, professional relator that has filed over 100 False Claims Act suits. This case is based entirely on data the Small Business Administration ("SBA") itself made public. Relator has no insider knowledge of San Luis Obispo Golf and Country Club ("the Club"), conducted no investigation beyond mining public databases, and never communicated with any person at the Club. Relator has blown no whistle here.

Relator has no case. Relator advances three fatally flawed theories: (i) that the Club was an ineligible "private club," (ii) that its economic-necessity certifications were false, and (iii) that it misused the loan proceeds. Discovery has demolished all three theories.

**First,** Relator's claims are completely barred by the public disclosure rule because its entire case consists of post-disclosure inference drawn from government data.

**Second**, the Club was eligible for PPP loans. **The record establishes that every single applicant to the Club has been accepted.** Janelle Meyer, the Club's general manager who previously served as the membership director, confirmed this, testifying that "[e]veryone who has ever applied to the club for membership has been approved." (SUF No. 5.) The Club has not turned any applicant away for any reason. (SUF No. 9.) Relator, for its part, admits it "[is] not aware of any individual who was denied membership to [SLOGCC] for reasons other than capacity." (SUF No. 11.)

**Second,** the SBA's $2 million safe harbor conclusively establishes that the good faith of the Club's economic-necessity certifications as a matter of law. The two loans for $971,700 and $971,752 fall below the threshold. Courts have granted summary judgment on this basis alone. United States v. ManPow, LLC, 2024 WL 305699, at *9 (C.D. Cal. Jan. 3, 2024) ("This rule is conclusive on Defendant's potential liability for its economic uncertainty certifications. . . . Since it is undisputed that both of Defendant's principal PPP loan amounts were less than $2 million, its economic uncertainty

1

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

certifications necessarily were made in good faith, and therefore could not be false, per the applicable SBA rules.").

**Third,** even without the safe harbor, the record leaves no doubt about economic necessity. By the time the Club applied, it was forced to close by government mandate, furloughed a substantial portion of its workforce, and was losing members and member spending. (SUF Nos. 15–17.) Greg Bethea, the Club's director of finance, confirmed that the loan was needed to bring back furloughed employees amid the uncertainty of the shutdown. (SUF No. 22.) Indeed, Relator admits it had no evidence of the Club's financial condition before filing. (SUF No. 19.)

**Fourth,** Relator cannot establish any misuse of PPP loan proceeds. Bethea confirmed that the Club deposited the funds into dedicated accounts, segregated the proceeds, and used the PPP funds only for payroll. (SUF No. 21.) Further, Relator disclaimed any independent theory that the PPP loan proceeds were diverted or misused for impermissible purposes. (SUF No. 29.)

**Fifth,** Relator cannot establish scienter. Far from "knowingly" submitting false certifications, the Club conducted due diligence, reviewing the PPP legislation and SBA guidance and consulting outside counsel, before determining that it was eligible. (SUF No. 13 and 14.)

The Court should grant summary judgment in the Club's favor.

## II.   STATEMENT OF THE CASE

### A.   The Parties

The Club is a for-profit California corporation that operates a golf and country club in San Luis Obispo, California. (SUF No. 1 & 2.) The Club received two PPP loans: PPP Loan 1 ($971,700.00, approved April 27, 2020, forgiven December 10, 2020) and PPP Loan 2 ($971,752.00, approved February 23, 2021, forgiven September 1, 2021). (SUF No. 4.)

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

Relator is a California limited liability company formed for the sole purpose of filing FCA claims. (SUF No. 3.) Relator has filed at over 100 FCA actions. (Id.)

## B.    The Club's Actual Membership Practices

The linchpin of Relator's theory is the assertion that the Club limits membership for reasons other than capacity, rendering it ineligible for PPP loans under 13 C.F.R. § 120.110(i). The undisputed evidence refutes this premise entirely.

**Every single applicant to the Club has been accepted for membership.** (SUF No. 5.) A club that accepts every applicant without exception cannot be "limit[ing] the number of memberships for reasons other than capacity[.]" 13 CFR § 120.110(i). Meyer, confirmed that no applicant to the Club was rejected for any reason during the relevant time period: "[e]veryone that applied for membership was approved" and that "[e]veryone who has ever applied to the club for membership has been approved." (SUF No. 5.) She confirmed that the Club has no interview requirement and no waiting list (SUF No. 8). As Meyer summarized, the Club "w[as] not limiting memberships by capacity[;] [e]verybody that applied got in[.]" (SUF No. 9.)

Consistent with that practice, in 2020, legacy "by member invitation only" language was removed from the Club's public website to align it with the Club's actual, open-membership practice. Meyer explained that the edit was made to "reflect what was actually happening, that every membership that was applied for was approved." (SUF No. 10.) Regardless of the marketing language used, the Club's real-world practice was – and remains – to admit every applicant subject only to capacity and payment of dues.

Because the only evidence demonstrates that the Club did not exclude a single applicant for any reason, and because Defendants have no evidence that any applicant was rejected for reasons other than capacity, there was no violation of 13 CFR § 120.110(i), the Club was eligible to receive PPP loans, and there was no false claim.

## C.    The Club's Due Diligence Before Applying

Before applying for its PPP loan, the Club engaged in due diligence regarding its eligibility. The Club reviewed the PPP legislation and the SBA's rules and guidance –

3

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

including the private-club rule – reviewed publicly available commentary and articles on the program's requirements and attended PPP webinars, and consulted outside counsel regarding the PPP requirements and the use of funds. (SUF Nos. 13, 14.) The Club's assessment was that it met the program's requirements reflects an informed and reasonable view of eligibility – and the complete absence of "actual knowledge" of ineligibility.

This diligence is corroborated by Bethea who prepared both the Club's PPP loan applications and both forgiveness applications, drawing the figures from the Club's actual payroll records and payroll-system calculators, and reviewed the program's certifications before submitting each application  for review and approval. (SUF No. 13.) He reviewed the SBA guidelines before submitting, was aware of the private-club rule, and understood that then-GM David Stocke was consulting with other country clubs, the Club Management Association of America, and counsel regarding eligibility. (SUF Nos. 13, 14.)

**D.     The Club's Economic Position During the Pandemic**

Contrary to Relator's unsupported allegation that "[b]usiness was good" for the Club (Compl. ¶ 50), the COVID-19 pandemic devastated the Club's operations. The pandemic forced the Club to close and then severely restrict its operations from March 2020 through June 2021, in accordance with government mandates. (SUF No. 15.) During the closure, the Club furloughed a substantial portion of its workforce and reduced employee hours, and the loan was needed to bring those employees back to work. (SUF No. 17.) A substantial number of members also resigned or downgraded their memberships and stopped paying full dues. (SUF No. 16.) The Club's revenues fell sharply during this period, and the loan was needed to keep its payroll funded during the covered period. (SUF No. 18.)

Bethea confirmed the severity of the disruption, testifying that the Club was "never fully open" in 2020 and was closed or partially closed from March 2020 through the summer of 2021, that only approximately 60 percent of members continued paying

4

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

full dues during the March–June 2020 closure, and that reduced dues were extended to certain memberships. (SUF Nos. 15, 16.) Asked about a contemporaneous email in which a director suggested the Club "didn't need the loan to survive[,]" Bethea flatly rejected that characterization testifying: "No, I did not agree with them. Because of the uncertainty of our lockdown and how long it was going to last, I felt that it was needed to bring back employees." (SUF No. 22.) Absent the PPP funds, he testified, the Club would have had to restructure its workforce and make "tough choices." (SUF No. 22.) Further, other members of the Board immediately corrected him writing "[t]he purpose of the Payroll Protection Loan (as intended by Congress) was to keep paying the employees. **Yes, pay them to stay home and do nothing if the club cannot open between the funding date and the 8 weeks following**." (SUF No. 30.)

### E.    The Club's Use of PPP Loan Proceeds

The undisputed testimony establishes that the Club used PPP loan proceeds for payroll. Bethea confirmed both the segregation and the use of the proceeds, testifying that the Club deposited the first PPP loan into its operating account and "set up internally a separate account to track the expenses[,]" and placed the second loan in "a separate account for just the PPP." (SUF No. 21.) He confirmed that "[t]he PPP funds were used for payroll[,]" and that no salary reductions were imposed and no bonuses were paid to executives or senior management during the period. (SUF No. 21.)

### F.    Relator's Binding Admissions

Relator's admissions conclusively establish the following:

- Relator was formed specifically for the purpose of filing qui tam actions under the FCA. (SUF No. 3.)
- The allegations in the Complaint are based solely on publicly available information. (SUF No. 23.)
- No current or former Club member or employee is a member or owner of Relator; neither Relator nor its agents ever applied for membership; Relator had no communications with anyone at the Club; it conducted no

5

investigation on Club grounds before filing; and it possesses no documents reflecting any communication with any current or former Club employee or member. (SUF No. 25.)

- Relator's membership-policy allegations are not based on any first-hand account from a person who was denied or discouraged from seeking membership, and Relator is not aware of any individual who was denied membership. (SUF No. 11.)

- Relator is unaware of any SBA determination that the Club was ineligible for PPP loans. (SUF No. 12.)

- Before filing, Relator had no documentary evidence regarding the Club's financial condition, membership dues, or layoffs or furloughs by the Club. (SUF No. 19.)

In short, Relator has no evidence that anyone has ever been denied admission by the Club and cannot possibly be an original source because its entire case is predicated on publicly available government data. Under Rule 36(b), "[a] matter admitted . . . is conclusively established" and may not be contradicted at summary judgment. Fed. R. Civ. P. 36(b); Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). These admissions require judgment in the Club's favor.

### G.   Relator's Confirmation of Lack of Non-Public Information

Relator is a two-member limited liability company formed for the sole purpose of filing qui tam actions, and both of its members are attorneys and they are the only two people who investigated the allegations in this case. (SUF No. 27.) Relator has filed roughly 100 qui tam actions. (SUF No. 3 & 27.)

Relator's interrogatory response, confirmed by Sharhriari, identifies SBA loan data, the Club's public website, and a Dun & Bradstreet business report, and states that those three sources "form the complete basis for Relator's discovery of the Allegations, and no further detail is available." (SUF No. 23.) Hakimi independently identified the same public sources – SBA loan data, the Club's website, and Dun & Bradstreet—and

6

confirmed that the SBA data disclosed only the loan amount, date, and bank, and nothing about the Club's use of proceeds, its membership practices, or its eligibility for the loans. (SUF Nos. 23 & 24.)

Both confirmed the absence of any pre-filing investigation beyond those public sources. Hakimi was not certain whether Relator ever contacted the Club, any member, any employee, or any former member or employee, and he had reviewed none of the Club's financial statements, tax returns, bylaws or articles, membership applications, PPP loan applications, or PPP forgiveness application before filing. (SUF No. 26.) He did not know how many members the Club had, what its capacity was, or whether it was at capacity when it applied for PPP loans. (Id.) Neither member could identify a single non-public fact underlying the Complaint.

Most directly, Relator's members confirmed that they are aware of no one who was ever denied membership at the Club for any reason other than capacity. Asked whether he was aware of anyone ever denied membership, Hakimi answered, "No." (SUF No. 11.) Asked the basis for the Complaint's allegation that the Club limits membership for reasons other than capacity, he pointed only to the Club's website. (Id.) This tracks Relator's binding admission that it is unaware of any applicant denied for non-capacity reasons. (Id.) More importantly, Relator is unable to cite to any evidence to contradict the Club's testimony that every applicant to the Club has been accepted. (SUF No. 11.)

Relator's members likewise confirmed they lack any factual basis for the Complaint's economic-necessity theory. Hakimi did not recall any factual basis for the allegation that membership dues were not diminished by COVID-19, did not know whether the Club let go of employees, was forced to close or restrict operations, or lost members during the pandemic, and had no evidence to support the Complaint's assertion that "[b]usiness was good." (SUF No. 28.) He conceded that the loans totaled less than $2 million, as the Complaint alleges ($1,943,452), did not recall awareness of the SBA's

7

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

good-faith safe harbor for sub-$2 million loans, and held no belief that the safe harbor does not apply. (SUF No. 4, 28.)

Finally, Relator's members confirmed they have no basis for the Complaint's use-of-proceeds or scienter theories. As to use of proceeds, Hakimi did not know how the Club used the funds, could identify no impermissible expenditure, and had no evidence the funds were spent on anything other than payroll—testifying only that he "would have to look into that more." (SUF No. 28.) He possessed no communication from anyone at the Club acknowledging ineligibility. (Id.) As to scienter, he did not recall what about the way the forms were completed supposedly suggested an "intention to deceive and cover up" as alleged in Relator's Complaint. (Compl. ¶ 7; SUF No. 28.) Indeed, it is impossible that Relator could have seen those forms outside of discovery in this case prior to filing the Complaint.

## III.   STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).

## IV.   ARGUMENT

### A.   The Public Disclosure Bar Requires Summary Judgment

"[T]he [FCA], . . . empowers . . . a 'relator' —to bring a suit on the Federal Government's behalf. . . . But the right to bring *qui tam* suits is not absolute." United States ex rel. Bennett v. Biotronik, Inc., 876 F.3d 1011, 1013 (9th Cir. 2017). To deter opportunistic realtors chasing windfalls, the FCA has robust procedural safeguards "intended to bar parasitic suits through which a plaintiff seeks a reward even though he has contributed nothing significant to the exposure of the fraud." United States ex rel. Devlin v. State of California, 84 F.3d 358, 362 (9th Cir. 1996).

"The public disclosure bar is triggered if three things are true: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is 'based upon' the allegations or transactions publicly disclosed." United States ex rel. Mateski v. Raytheon Co., 816 F.3d 565, 570 (9th Cir. 2016) (quoting Malhotra v. Steinberg, 770 F.3d 853, 858 (9th Cir. 2014)). If all three prongs are satisfied, the action must be dismissed unless the relator qualifies as an "original source." Mateski, 816 F.3d at 569. An allegation refers to a prior "direct claim of fraud," while a "transaction" refers to the disclosure of "facts from which fraud can be inferred." Silbersher v. Valeant Pharms. Int'l, Inc., 89 F.4th 1154, 1167 (9th Cir.), cert. denied, 145 S. Ct. 140 (2024) (quoting Mateski, 816 F.3d at 571).

The Ninth Circuit has held that "[t]he substance of the disclosure . . . need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." Mateski, 816 F.3d at 571 (quoting United States ex rel. Found. Aiding Elderly v. Horizon W., 265 F.3d 1011, 1014 (9th Cir.), opinion amended on denial of reh'g sub nom., 275 F.3d 1189 (9th Cir. 2001)).

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

The public-disclosure bar is construed broadly to prevent "parasitic" suits. Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010). Reports, audits, FOIA responses, and government-published datasets qualify as public disclosures. Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 407–12 (2011).

> **i.      The Court's Order Denying Defendant's Motion to Dismiss Forecloses Nothing; the Closed Record Compels Summary Judgment on the Public Disclosure Bar**

In denying the Club's motion to dismiss, the Court resolved a single, posture-bound question: whether, accepting the Complaint's allegations as true, Relator had pleaded enough to proceed, and held that it had:

> Relator's complaint alleged information necessary to support a fraud claim that was additional to what had been publicly disclosed or could be inferred from the public disclosures—namely, that SLOGCC is not open to the general public and that there are restrictions to joining that have nothing to do with capacity.

(Order at 10 (citing Compl. ¶ 4), Dkt. No. 57.) The Court was bound to accept that allegation as true. And said in plain terms that the Club's contrary showing, that the allegation is "speculative and lack[s] additional support[,]" presented "factual issues that are better resolved at summary judgment." (Order at 13.) The Court repeated that instruction throughout its order, directing the Club's "factual challenges" to "once again, be[] better resolved at summary judgment." (Id. at 12–14.)

The Court also expressly declined to reach the dispositive backstop. Having found no public disclosure on the pleadings, it held: "Because the Court finds that the public disclosure bar does not apply to Relator's claim, the Court need not examine whether the 'original source' exception applies." (Id. at 10.) That question, whether Relator possesses knowledge "independent of and materially add[ing] to" the public disclosures,

10

31 U.S.C. § 3730(e)(4)(B), remains open and is now squarely presented on a closed evidentiary record.

A ruling under Rule 12(b)(6), does not constrain the Court once those allegations are measured against admissible evidence under Rule 56. The two inquiries ask different questions on different records, and the Court here did not merely leave that distinction open, it directed these very issues to this stage. The Club does not ask the Court to revisit a decided question; it asks the Court to decide, on evidence unavailable at the pleading stage, the questions it reserved.

### ii. Discovery Has Disproven the Premise on Which the Order Rested.

The Order turned on the premise that the Complaint supplied an element the public disclosures lacked. Applying the <u>Mateski</u> formula—"[i]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements[,]" a misrepresented state of facts and a true state of facts—the Court found that the public SBA and ProPublica data supplied only the true facts (that the CLub is a country club that received PPP loans) and "d[id] not reveal that SLOGCC is a private club which limits the number of memberships for reasons other than capacity." (Order at 9–10 (quoting <u>Mateski,</u> 816 F.3d at 571–72).) The Complaint "supplied" that missing element by alleging non-capacity restrictions. (Compl. ¶ 4.)

The closed record establishes that Relator did not supply that element from any independent source, it inferred it from the public disclosures themselves. Relator has admitted that "the allegations in the Complaint are based solely on publicly available information," and that three public sources, the SBA loan data, the Club's public website, and a Dun & Bradstreet report, "form the complete basis for Relator's discovery of the Allegations. . . ." (SUF Nos. 23–24). Relator confirmed that the sole basis for the Complaint's central allegation that the Club "limit[s] the number of memberships for reasons other than capacity" was the legacy "invitation only" language on the Club's website and the Club's name. (SUF No. 11.) Asked whether he was aware of anyone

11

ever denied membership, Relator's member Hakimi answered "No[,]" conceding the allegation was pure inference. (SUF No. 11.) Relator possessed no non-public document, never communicated with anyone at the Club, performed no investigation beyond mining the public sources, and is unaware of any SBA determination that the Club was ineligible. (SUF Nos. 12, 25, 26.)

That evidence dissolves the distinction on which the MTD Order rested. The "additional" content the Court credited at the pleading stage was not, in fact, "additional to what had been publicly disclosed"; it was, by Relator's own admission, an inference drawn from what had been publicly disclosed. (Order at 10.) Worse for Relator, it is the very inference the Court already held the public data could not reasonably bear. The Court rejected the proposition that the Club's name, or its description as a "private club," supports an inference that it "limit[s] the number of memberships for reasons other than capacity[,]" precisely because country clubs are not categorically ineligible for PPP loans. (Order at 9–10.) Relator cannot resuscitate that discredited inference, and escape the bar, by recasting it as though it were independently sourced fact. The undisputed record confirms what the Order was required to assume away: Relator did no more than draw an inference of fraud from publicly available government data.

### iii. On the Closed Record, the Bar Is Satisfied and Relator Is Not an Original Source—the Question the Court Reserved.

With discovery closed, the result follows on two independent tracks, each established beyond genuine dispute.

First, the action is based upon substantially the same transaction that was publicly disclosed. The transaction – the Club received and obtained forgiveness of two PPP loans – was indisputably disclosed by the SBA's federal report and by ProPublica's news-media publication, qualifying public disclosures the Court judicially noticed and Relator did not contest. (Order at 6.) The only thing the Order found distinguished the Complaint from those disclosures was ¶ 4's non-capacity-restriction allegation, which the record now shows was itself nothing but Relator's inference from those same

12

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

disclosures. An action assembled from a publicly disclosed transaction plus the relator's own inference of fraud is "based upon" the public disclosure within the meaning of 31 U.S.C. § 3730(e)(4)(A); that is precisely the Mateski scenario in which a relator infers Z from publicly disclosed facts. (Order at 8.) Relator added no fact the public record lacked – only the inference – so substantially the same transaction was publicly disclosed.

Second, and dispositively, Relator is not an original source. Because the transaction was publicly disclosed, Relator may proceed only as an "original source"— one with "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions[.]" 31 U.S.C. § 3730(e)(4)(B). "Relator bears the burden of establishing that he qualifies as an original source." United States ex rel. Solis v. Millennium Pharms., Inc., 445 F. Supp. 3d 786, 795 (E.D. Cal. 2020), aff'd, 852 F. App'x 298 (9th Cir. 2021). It cannot, for two reasons that the record makes indisputable. "[T]he requirement of 'independent' and 'material[]' knowledge is a meaningful hurdle to overcoming the public disclosure bar." United States ex rel. Jones v. Sutter Health, 499 F. Supp. 3d 704, 717 (N.D. Cal. 2020) (citations omitted).

Relator cannot satisfy either prong. By its own admission, Relator has no independent knowledge and obtained all information from publicly available government data and never communicated with any person at the Club or read any documents about the Club. A relator who does nothing more than analyze publicly available government data cannot be an original source. "Independent knowledge ordinarily means knowledge that preceded the public disclosure[.]" Malhotra v. Steinberg, 770 F.3d 853, 860 (9th Cir. 2014)

Relator's own admissions independently foreclose original-source status. (SUF No. 25.) A party that admits it has no independent knowledge cannot "materially add" to the public disclosures. Relator's verified interrogatory responses affirmatively represent that the three public sources "form the complete basis" for the allegations, that "[n]o additional publicly available materials were consulted[,]" that "[t]he list of sources

13

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

is complete[,]" and that Relator had no communications with any current or former member, employee, contractor, or vendor of the Club. (SUF Nos. 23, 26.) Relator's knowledge did not precede the SBA data; it was drawn entirely from it, after the fact. (SUF Nos. 23–26.) And Relator "materially adds" nothing: the only thing it brought to the public data was the inference of fraud, which the original-source exception does not protect. A relator that supplies only speculation has "filed suit on the basis of speculation, and not—as required by the applicable law—true knowledge of fraudulent misconduct." Prather v. AT&T, Inc., 847 F.3d 1097, 1105 (9th Cir. 2017). That is this case: Relator's members could not identify a single non-public fact, their central allegation rests on an inference the Court has already rejected, and they concede awareness of no person ever denied membership for any non-capacity reason. (SUF Nos. 11, 28.)

This is the parasitic suit the public disclosure bar exists to bar. The Court withheld this conclusion at the pleading stage only because it was required to assume Relator had contributed something the public record lacked. Discovery has closed, and the record shows it did not. The Court should grant summary judgment in the Club's favor on the public disclosure bar.

**B.      The Club Was Eligible for the PPP Loans**

**i.      The Regulatory Standard: 13 C.F.R. § 120.110(i)**

Relator's primary theory is that the Club was categorically ineligible under 13 C.F.R. § 120.110(i), which provides that "[p]rivate clubs and businesses which limit the number of memberships for reasons other than capacity" are ineligible for SBA business loans. Id. This provision has a precise and narrow scope: it excludes only clubs that restrict membership for non-capacity reasons. An organization that accepts all applicants up to its physical or operational capacity is not covered.

The burden falls on Relator to prove that the Club limited memberships for reasons other than capacity during the relevant period. Relator must do more than just

posit hypotheticals; it must prove that the Club actually denied or restricted applicants based on impermissible, non-capacity criteria. The undisputed evidence shows it cannot.

### ii.   Undisputed Evidence Establishes the Club Does Not Limit Membership for Reasons Other Than Capacity

The evidence on this point is unambiguous. From at least 2014 to the present, every single applicant to the Club has been accepted for membership. (SUF No. 5.) A club that accepts every applicant without a single rejection cannot, by definition, be limiting memberships for non-capacity reasons.[1]

This conclusion no longer rests on inference. Meyer testified that "[e]veryone that applied for membership was approved," and confirmed that "[e]veryone who has ever applied to the club for membership has been approved." (SUF No. 5.) The Club imposes no interview requirement and maintains no waiting list (SUF No. 8); in the witness's words, "everybody that does apply gets in." (SUF No. 8.) The designee confirmed that the Club "w[as] not limiting memberships by capacity[;] [e]verybody that applied got in." (Id.) That testimony resolves the dispositive fact: § 120.110(i) renders a business ineligible only if it "limit[s] the number of memberships for a reason other than capacity[,]" and the undisputed record establishes that the Club does the opposite. Id.

### iii.   Relator Cannot Carry Its Burden of Proof on Ineligibility

Relator alleges only in the most conclusory terms that the Club has "many restrictions to joining" that have "nothing to do with the club's capacity." (Compl. ¶ 4.) It does not identify a single specific restriction, a single rejected applicant, or a single non-capacity basis for denial. More importantly, Relator has now admitted as much: it conceded that its membership-policy allegations "are not based on any first-hand account from a person who was denied or discouraged from seeking membership", and that it "is not aware of any individual who was denied membership to [SLOGCC] for

---

[1] While Relator has pointed to marketing materials that suggested membership is "by invitation only," from 2018 to the present, at least 47 members were accepted without being formally "invited" by an existing member, directly refuting the suggestion that the Club's invitation requirement functioned as an exclusionary barrier. (SUF No. 7.)

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

reasons other than capacity." (SUF No. 11.) Those conclusive admissions leave Relator with no evidence on the single fact that determines eligibility under 13 C.F.R. § 120.110(i) and they stand against the verified discovery responses and sworn testimony of the Club that every applicant is admitted. (SUF Nos. 5, 9.) Relator has likewise admitted it is unaware of any SBA determination that the Club was ineligible. (SUF No. 12.) Relator's speculation that a country club "must" restrict membership cannot survive summary judgment when Relator admits it cannot identify a single applicant who was denied entry and the Club's testimony shows universal acceptance of all applicants.

Relator's members confirmed its lack of factual basis for the premise of its eligibility theory. Hakimi is aware of no one ever denied membership at the Club, including as of the filing date. (SUF No. 11). The sole basis he offered for the allegation was the website's "invitation only" language, and he conceded the allegation is pure inference. (Id.) To the extent Relator suggests that charging membership fees alone defeats eligibility, Hakimi could identify no SBA guidance, regulation, or case law supporting that position. (Id.) That testimony confirms, from Relator's own side of the table, that the "non-capacity" theory is naked inference from a public website refuted by the Club's Rule 30(b)(6) testimony that every applicant is admitted (SUF Nos. 5, 9) and by Relator's binding admission (SUF No. 11.) The inference is also affirmatively false: a prospective applicant who knows no current member is not foreclosed from joining, because the Club's Membership Director arranges for the Membership Committee itself to sponsor such an applicant. (SUF No. 6.)

There is, then, no genuine issue of material fact as to the Club "limit[ed] the number of memberships for reasons other than capacity[.]" 13 C.F.R. § 120.110(i)—it did not. Because no reasonable jury could find in Relator's favor on this point, summary judgment must be granted.

16

### C.    The SBA's $2 Million Safe Harbor Bars the Economic Necessity Claim as a Matter of Law

Independently, the Club has a complete defense to Relator's economic-necessity theory: it is protected by the SBA's $2 million safe harbor. On May 13, 2020, the SBA issued FAQ #46, which provided:

> Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith.

(SUF No. 20.) The SBA later codified this safe harbor in an Interim Final Rule effective January 14, 2021. ManPow, 2024 WL 305699, at *9 (citing 86 Fed. Reg. 3692, 3692–94, 3706 & n.87 (Jan. 14, 2021)). The phrase "will be deemed" creates a conclusive presumption – not a rebuttable one. Both loans combined fall well below the $2 million threshold: PPP Loan 1 at $971,700.00 and PPP Loan 2 at $971,752.00, totaling $1,943,452.00. (SUF No. 4.) As a matter of law, SLOGCC is *deemed* to have made its economic-necessity certifications in good faith.

ManPow is directly on point. There, the court granted summary judgment for a PPP borrower, holding that where it is undisputed that a defendant's principal PPP loan amounts were less than $2 million, its economic-uncertainty certifications necessarily were made in good faith and could not be false under the applicable SBA rules:

> This rule is conclusive on Defendant's potential liability for its economic uncertainty certifications. 15 U.S.C. § 636(a)(36)(G) required PPP borrowers to "make a good faith certification" that current economic uncertainty made their PPP loans necessary. The SBA effectively absolved borrowers with principal loan amounts of less than $2 million of this requirement via its rulemaking process by later "deem[ing] [them] to have made the required certification . . . in good faith." 86 Fed. Reg. at 3706. **Since it is undisputed that both of Defendant's principal PPP loan**

17

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

**amounts were less than \$2 million, its economic uncertainty certifications necessarily were made in good faith, and therefore could not be false, per the applicable SBA rules.**

ManPow, 2024 WL 305699, at *9 (emphasis added). There is no genuine dispute here: the amount of both loans is undisputed, and the safe harbor applies as a matter of law. Because the loans fall well below the \$2 million threshold, the safe harbor applies as a matter of law and resolves the economic-necessity theory without any need to weigh the factual record. (SUF Nos. 4, 20.)

**D.  The Record Independently Establishes Genuine Economic Necessity**

Even setting aside the safe harbor, the record establishes that the Club had a genuine, good-faith basis for its economic-necessity certifications. The pandemic forced the Club to close and severely restrict operations from March 2020 through June 2021. (SUF No. 15.) During the closure, the Club furloughed a substantial portion of its workforce and reduced employee hours. (SUF No. 17.) A substantial number of members resigned or downgraded their memberships and stopped paying full dues. (SUF No. 16.) And the Club's revenues fell sharply from pre-pandemic levels. (SUF Nos. 16, 22.) The undisputed testimony confirms the loan was needed to keep the Club's payroll funded during the covered period. (SUF No. 18.)

Relator admitted it has no evidence to the contrary. It conceded that, before filing, it had no documentary evidence of the Club actual financial condition, no documentary evidence that membership dues were unaffected by the pandemic, and no documentary evidence regarding the Club's layoffs or furloughs (SUF No. 19.) Relator's interrogaroy response confirms the point from the other direction: pressed to state the facts supporting its necessity theory, Relator could identify only the supposed absence of "[any] publicly available indication" that the Club's membership declined, that dues were suspended, or that operations were curtailed. (Id.) That is an admission that Relator's theory rests on the absence of public information, not on any evidence of the Club's actual financial health.

18

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

Bethea testified that the loan "was needed to bring back employees" given "the uncertainty of our lockdown and how long it was going to last," and expressly declined to adopt a director's contrary suggestion that the Club did not need the loan to survive. (SUF No. 22.) He further testified that, without the PPP funds, the Club would have been forced to restructure its workforce and make "tough choices." (Id.) This forecloses any genuine dispute that the Club had a good-faith basis for its economic-necessity certifications.

Relator's member confirmed that the Complaint's economic-necessity allegations rest on no facts at all. Hakimi did not recall any factual basis for the allegation that membership dues were not diminished by COVID-19; did not know whether the Club let go of employees, was forced to close or restrict operations, or lost members during the pandemic; and had no evidence to support the Complaint's assertion that "[b]usiness was good." (SUF No. 28.) Relator's necessity theory is therefore speculation.

### E.    The Club Used the PPP Loan Proceeds Exclusively for Payroll

The record establishes that the Club used its PPP proceeds for payroll. Bethea testified that the Club segregated the proceeds and confirmed that "the PPP funds were used for payroll only." (SUF No. 21.) He further confirmed that no bonuses were paid to executives or senior management during the period, foreclosing any inference that proceeds were diverted to enrich management rather than to restore the payroll the program was designed to protect. (Id.) The Club's verified interrogatory responses corroborate that segregation at the account level. (SUF No. 21.)

Relator has affirmatively disclaimed any independent theory of misuse. In its discovery responses, Relator states that its sole use-of-proceeds theory is that the Club's alleged ineligibility "renders any and all use of the loan proceeds impermissible as a matter of law[,]" and that Relator "does not assert an independent theory that loan proceeds were diverted from permitted uses." (SUF No. 29.) That concession is dispositive: Relator's use-of-proceeds theory rises and falls entirely with its eligibility theory, which fails for the reasons explained above. Relator's binding admissions are

19

fatal: that it had no relevant documents, never communicated with anyone at the Club, drew solely on public SBA data, and asserts no independent diversion theory at all. (Id.)

Relator's member confirmed that Relator has no evidence the proceeds were misused. Hakimi did not know how the Club used the proceeds, could not identify any impermissible expenditure, and had no evidence the funds were spent on anything other than payroll, testifying only that he "would have to look into that more." (SUF No. 28.) Relator reviewed no Club financial or loan records (SUF No. 26) and possesses no document or communication suggesting misuse (SUF No. 28.)

**F.    Relator Cannot Establish the Required Scienter**

Even if Relator could establish technical ineligibility or some inaccuracy in the Club's certifications (it cannot), Relator must still prove that the Club acted "knowingly." "Liability under the FCA is established only when the defendant 'knowingly' presents a false or fraudulent claim for payment." United States ex rel. Ormsby v. Sutter Health, 444 F. Supp. 3d 1010, 1054–55 (N.D. Cal. 2020) (quoting Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1211 (9th Cir. 2019)). "'Knowingly' is defined as having: (1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information[.]" Id. (citing 31 U.S.C. § 3729(b)(1)(A)).

The undisputed evidence here establishes that Relator cannot make this showing given the extensive due diligence conducted by the Club.

**i.    The Record Reflects Good-Faith Deliberation, Not Fraud**

The Club's conduct is the opposite of what a fraudulent scheme looks like. As the Club's witness testified, management reviewed the SBA guidelines and the program's certifications, prepared each application from the Club's actual payroll records, and consulted regarding the Club's eligibility as a for-profit club with outside counsel and the Club Management Association of America before certifying. (SUF Nos. 13, 14.) Relator has no evidence to the contrary.

20

This record reflects precisely the kind of good-faith analysis, internal debate, and self-policing that is fundamentally incompatible with "knowing" fraud.

### ii. The Extensive Due Diligence Negates Any Inference of Scienter

The breadth of The Club's pre-application due diligence is again undisputed. Stocke and Bethea reviewed the PPP legislation and the SBA's rules and guidance, reviewed publicly available commentary and articles, and attended PPP webinars (SUF No. 13), and consulted outside counsel regarding eligibility and the use of PPP funds (SUF No. 14). Bethea corroborated this diligence: he prepared each application from the Club's actual payroll records, calculated through the Club's Paychex payroll system, reviewed the required certifications before submission, and reviewed the SBA guidelines – including the private-club rule – beforehand. (SUF No. 13.) Relator has no evidence that contradicts these facts. A party that investigates this thoroughly, and builds its applications from real payroll data measured against the governing rules, cannot be said to have acted with reckless disregard or deliberate ignorance of the truth.

Relator could not substantiate the scienter theory either. The Complaint alleges that "the way the forms were filled out" showed "an intention to deceive and cover up." (Compl. ¶ 7.) Asked what specifically about the forms suggested an intent to deceive, Hakimi answered: "Oh, I don't recall exactly." (SUF No. 28.) Relator reviewed neither the loan applications nor the forgiveness application before filing (SUF No. 26) and possesses no communication from anyone at the Club acknowledging ineligibility (SUF No. 28.) There is no evidence of a knowing falsehood.

## V. CONCLUSION

For the foregoing reasons, there is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law. This case epitomizes the litigation the FCA's public disclosure bar was designed to prevent: a professional, serial relator with no insider knowledge, mining publicly available government data in the hope of extracting a settlement from a legitimate business that properly applied for – and

21

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

properly used – emergency pandemic relief funds. The Court should grant summary judgment and put an end to this unfounded litigation.

Dated: June 26, 2026             Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Jonas P. Mann

*Attorneys for Defendant San Luis Obispo Golf and Country Club*

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **6,994** words, which complies with the word limit of L.R. 11-6.1.


Dated: June 26, 2026                    Respectfully submitted,

                                        */s/ Matthew Donald Umhofer*
                                        UMHOFER, MITCHELL & KING, LLP
                                        Matthew Donald Umhofer
                                        Jonas P. Mann

                                        *Attorneys for Defendant San Luis Obispo Golf
                                        and Country Club*

23

*DEFENDANT SAN LUIS OBISPO GOLF AND COUNTRY CLUB'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT*